2022-1475

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

TIMOTHY MOORE,
*Plaintiff-Appellant*

v.

UNITED STATES,
*Defendant-Appellee*

---

On Appeal from the Court of Federal Claims
The Honorable Charles F. Lettow, Senior Judge
No. 1:21-cv-01931-CFL

---

APPELLANT'S REPLY BRIEF

---

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
Telephone: 703-841-1112
Facsimile: 703-841-1006
peterbroida@gmail.com

Attorney for Timothy Moore

July 28, 2022

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    MOORE'S COMPLAINT WAS NOT REQUIRED TO ALLEGE HISTORICAL OR INTENTIONAL DISCRIMINATION TO PLEAD A *PRIMA FACIE* EPA VIOLATION . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    MOORE PROPERLY RELIES ON GUIDANCE FROM THE LABOR DEPARTMENT AND EEOC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    RESOLUTION OF RESPONDENT'S AFFIRMATIVE DEFENSES MUST AWAIT DEVELOPMENT ON REMAND IN THE CLAIMS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    D.    THE SCOPE OF DISCOVERY IS PROPERLY LEFT TO THE CLAIMS COURT ON REMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    CONCLUSION AND RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520 (2d Cir. 1992) . . . . . . . . . . 14

*Alexander v. United States*, 32 F.3d 1571 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . 11

*Akpeneye v. United States*, 990 F.3d 1373 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . 11

*Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . 10

*Briggs v. Univ. of Cincinnati*, 11 F.4th 498 (6th Cir. 2021) . . . . . . . . . . . . . . . . 14

*Burke v. New Mexico*, ___F.4th___ (10th Cir. June 8, 2017) (NP) (No.16-2238) . 5

*Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994) . . . . . . . . . . . . . . . 15

*EEOC v. J.C. Penney Co.*, 843 F.2d 249 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . 14

*Gordon v. United States*, 903 F.3d 1248 (Fed. Cir. 2018),
*vacated*, 754 Fed.Appx. 1007 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kaplan v. United States*, 727 Fed.Appx. 1011 (Fed. Cir. 2018) (NP) . . . . . . . . . 2

*Lanehart v. Horner*, 818 F.2d 1574 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 10

*Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) . . . . . 16

*Middleton v. DOD*, 185 F.3d 1374 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 15

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Taylor v. White*, 321 F.3d 710 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Williams v. SSA*, 586 F.3d 1365 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 16

*Yant v. United States*, 588 F.3d 1369 (Fed. Cir. 2009),
*cert. den.*, 562 U.S. 827 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES, REGULATIONS

5 CFR 551.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5 CFR 551.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 USC 203(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 USC 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 USC 206(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I.  SUMMARY OF ARGUMENT

The issue is the sufficiency of Moore's Claims Court EPA complaint. That complaint was sufficient through its particularized assertions that Moore was paid less than female comparators doing essentially the same work under the same working conditions at SEC. Those allegations placed on SEC the burden of proving one of the EPA defenses, including that the pay differentials were for legitimate business reasons other than sex. It was improper to dismiss Moore's complaint for failure to plead in his complaint that the wage disparities were the result of historical or intentional sex discrimination. Moore properly relies on Labor Department and EEOC guidance concerning the elements of an EPA claim. The extent of discovery is properly reserved to consideration by the Claims Court on remand.

# II.  ARGUMENT

## A.    MOORE'S COMPLAINT WAS NOT REQUIRED TO ALLEGE HISTORICAL OR INTENTIONAL DISCRIMINATION TO PLEAD A *PRIMA FACIE* EPA VIOLATION

Although there are differences revealed by the parties' briefs as to some of the subsidiary facts that are not necessary to reach a decision in this Court, on the main point of the appeal, the parties' differences are clear; they are discussed in this Reply.

Moore asserts he pleads a *prima facie* EPA case by showing a wage difference with female comparators, leaving the Respondent to justify the disparity—as to which there's no disagreement—on the basis of one of the EPA statutory defenses, leaving Moore to demonstrate that the affirmative defense is not justified in law or fact. Moore's *prima facie* case is that simple.

Moore's complaint follows 29 USC 206(d)(1):

> No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . .

The statute sets the analytical structure: paying male and female comparators unequal pay for equal work is prohibited discrimination, subject to the statutory affirmative defenses.

The fourth affirmative defense under 29 USC 206(d)(1) is "a differential based on any other factor other than sex."

There is no point to the affirmative defense if the plaintiff must first show that the differential is not based on a factor other than sex. There is no basis for Respondent's contention that in addition to nonfrivolous assertions of a wage disparity in an EPA complaint, leaving the employer to its affirmative defenses,

plaintiff must plead facts in the complaint demonstrating that the disparity was because of his sex or gender, as Respondent argues at pp. 5, 9 of its brief. The disparity establishes the *prima facie* case.

This much seemed clear as recently as the decision in *Kaplan v. United States*, 727 Fed.Appx. 1011 (Fed. Cir. 2018) (NP), discussed at p. 16 of Moore's principal brief. Respondent made no mention of *Kaplan* in its briefing, and the decision is not precedential, but it is instructive, for it referenced *Yant v. United States*, 588 F.3d 1369, 1372 (Fed. Cir. 2009), *cert. den.*, 562 U.S. 827 (2010), that in turn cited *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974), that in turn explained to establish a *prima facie* EPA case, "plaintiffs 'must show that an employer pays different wages to employees of opposite sexes `for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

*Yant*, however, went on to determine, as it affirmed entry of summary judgment (not the motion to dismiss granted against Moore), that for a mixed group of professionals in different occupational groups, the plaintiffs must essentially show a historical pattern of wage discrimination, *id*. at 1372, 1374:

> . . . We agree that summary judgment was appropriate, but for reasons other than gender ratios. As discussed below, the plaintiffs have failed to raise a genuine issue of material fact that the pay differential between NPs and PAs

is either historically or presently based on sex . . . .

. . .

. . . An Equal Pay Act violation is established when an employee demonstrates past or present discrimination based on sex. . . .

The reasoning of *Yant* was then incorporated into a straightforward comparator case, *Gordon v. United States*, 903 F.3d 1248 (Fed. Cir. 2018), *vacated*, 754 Fed.Appx. 1007 (Fed. Cir. 2019).

Then, leading to dismissal of Moore's case, the Claims Court relied on *Yant* and *Gordon*, *Moore v. United States*, 157 Fed. Cl. 747 (2022), Appx3-4

> . . . The Court of Appeals for the Federal Circuit has explained that, as concerns Equal Pay Act allegations, it is Mr. Moore's burden to "show[] that discrimination based on sex exists or at one time existed." *Yant v. United States*, 588 F.3d 1369,1373 (Fed. Cir. 2009).[3] In short, to survive dismissal, Mr. Moore's complaint must make more than speculative and conclusory averments that the difference in pay between himself and the two named, female comparators is the result of "past or present discrimination based on sex." *Id*. at 1374.

> > [3] Mr. Moore contends that a showing of sex discrimination is not required to make a prima facie case under 29 U.S.C. § 206(d)(1). Pl.'s Opp'n at 7-8. However, plaintiff relies on decisions from this court that predate the Federal Circuit's decision in *Yant*. *Id*. (citing *Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008) (additional citations omitted)). Decisions within the Federal Circuit's purview that issued after *Yant* recognize the sex discrimination element of a *prima facie* case. *See Gordon v. United States*, 903 F.3d 1248,1252 (Fed. Cir. 2018), *vacated on other grounds*, 454 Fed. Appx. 1007 (Fed. Cir. 2019). Mr. Moore's opposition even cites one such case. *Id*. at 8 (citing *Kaplan v. United States*, 126 Fed. Cl. 72, 82 (2016) ("[F]or plaintiff to establish a prima facie violation, therefore, she must show that [the government] discriminated on the basis of sex.")). . . .

From the dismissal, Moore appealed to this Court, where he argued in his principal brief that *Yant* was inapplicable because it did not involve a traditional comparator case and *Gordon* was of no precedential weight once the decision was vacated.

As we understand Respondent's argument, the Government does not now rely on *Yant*:

> . . .This appeal does not involve two mixed-gender groups nor does it involve claims of gender discrimination by both men and women encumbering the same position. For that reason, *Yant*, which was highly dependent on its unusual facts, is of limited relevance, and certainly does not stand for the broad proposition for which Mr. Moore uses it.

Resp. Br., pp. 11-12.

Respondent and Moore agree on the inapplicability of *Yant* by reason of the distinction between a simple comparator case—Moore's—and what amounts to a case of class-based wage discrimination—Yant's. As to Respondent's note about reliance by Moore on *Yant* for the "broad proposition for which [he] uses it," Moore would as well not address *Yant* and would not but for the basis and result of the Claims Court decision. And if *Yant* is not material to the decisional process, also not material is *Gordon*, a decision that passed without mention in Respondent's brief.

That *Yant* is inapplicable to a basic comparator case is inescapable. The EPA was enacted decades ago to provide a straightforward remedy for historical wage discrimination throughout the nation by many employers. The approach and test for

a *prima facie* case under the EPA was simple; it did not require reinvention through proof in an individual wage earner's case of patterns of historical or present intentional discrimination by a given employer. The burden of proof was for the employer to prove its statutory defense to the disparity.

*Burke v. New Mexico*, ___F.4th___ (10th Cir. June 8, 2017) (No.16-2238) (NP), recapitulated the EPA analysis:

> First, whether an employer acted with discriminatory intent is not relevant in an EPA case. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310-11 (10th Cir. 2006) (observing that "[t]he EPA[ ] . . . impos[es] a form of strict liability on employers who pay males more than females for performing the same work").
>
> Second, a plaintiff need only "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). As the district court acknowledged, Ms. Burke alleged she was paid less than a male colleague for "the exact same work" based solely on her sex, R. at 83. Further, Ms. Burke specifically targeted GSD as responsible for the wage discrimination. *See id.* at 83 (alleging that "GSD has no legitimate, non-discriminatory business reason for failing to pay Ms. Burke equitably" and that "[GSD] does not pay pursuant to any seniority, merit or quantity/quality of production system"). This is sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) ("To establish a prima facie case of pay discrimination under the EPA, a plaintiff must demonstrate that: (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." (internal quotation marks omitted)).

-6-

Moore's complaint described comparators and the pay disparity with some

particularity and stated Respondent would not be able to establish an EPA affirmative

defense. More should not have been required.  Appx57-63

### B.    MOORE PROPERLY RELIES ON GUIDANCE FROM THE LABOR DEPARTMENT AND EEOC

Analysis of a Moore's *prima facie* case was supported by citation in his principal

brief to issuances from the Labor Department and EEOC.

> Respondent deflects those references, arguing (Resp. Br., 13-14):
>
> However, the DOL regulations do not apply to the United States as employer. Congress has directed that the Office of Personnel Management (OPM), not the Department of Labor, shall promulgate regulations that govern the application of the FLSA, including the EPA, to the Federal Government. 29 U.S.C. §§ 203(e)(2); 204(f). Moreover, as explained above, the allegations of the complaint (and the undisputed facts) establish that the wage differential about which Mr. Moore complains is not based upon sex, an elemental requirement under the statute.
>
> Further, Title VII (to which the EEOC regulations implement) provides for jurisdiction in a United States district court," but not in this Court. 42 U.S.C. § 2000e-5(f)(3)." Thus, the EEOC regulations cannot serve as a binding or persuasive authority in this Court, as OPM's EPA regulations govern the administration of the EPA to federal employees. 29 U.S.C. § 203(e)(2); 204(f). Consequently, the regulations cited by Mr. Moore, therefore, do not come into play in this case.

FLSA, 29 USC 203(e)(2) extends its coverage to federal employees. 5 USC 204(f)

places general administrative enforcement authority for most of those employees with

OPM rather than the DOL. EEOC's role is noted, *post*.

OPM follows DOL guidance, tailored to the considerable complexities of statutory pay and pay premium schemes in place at federal agencies. Under 5 CFR 551.101(c):

> OPM's administration of the Act must comply with the terms of the Act but the law does not require OPM's regulations to mirror the Department of Labor's FLSA regulations. OPM's administration of the Act must be consistent with the Department of Labor's administration of the Act only to the extent practicable and only to the extent that this consistency is required to maintain compliance with the terms of the Act. For example, while OPM's executive, administrative, and professional exemption criteria are consistent with the Department of Labor's exemption criteria, OPM does not apply the highly compensated employee criteria in 29 CFR 541.601 to determine FLSA exemption status.

The rulemaking notice associated with the OPM regulation explained that DOL guidance and OPM regulations were to be harmonized, not that DOL guidance developed over decades of experience with the FLSA was to be jettisoned, 72 Fed.Reg. 52753 (Sept. 17, 2007), at pp. 52753, 52754:

> On May 26, 2006, the Office of Personnel Management (OPM) published proposed regulations (71 FR 30301) to amend 5 CFR, part 551, subparts A, B, F and G. The changes were proposed to update and harmonize OPM's regulations with the Department of Labor's (DoL) regulations issued under the Fair Labor Standards Act of 1938 (referred to as "FLSA" or "the Act"). In addition, we provided in the proposed regulations a clearer understanding of coverage for executive, administrative, and professional employees by adding definitions and examples.
>
> . . .
>
> One labor organization suggested that DoL's regulations appear to violate the letter or spirit of the FLSA, and while OPM's interpretation of the FLSA must

be generally consistent with DoL's interpretation, OPM need not mirror DoL where doing so would violate the FLSA. We note that the commenter's concern is addressed in § 551.101©. We also note that DoL's changes have gone through the Administrative Procedure Act (APA) review and comment process and now have the force of law. To the extent that OPM's regulations are consistent with DoL's regulations, OPM does not violate the FLSA; hence, the labor organization's comment is misplaced. We have provided examples to the extent we believe necessary to properly apply the regulations.

*Zumerling v. Devine*, 769 F.2d 745, 749-50 (Fed. Cir. 1985), involving OPM's

equation for FLSA overtime pay to firefighters, explained the functionally close tie

between Labor Department and OPM administration of the statute:

> While, in general, the Secretary of Labor has been given the responsibility to administer the FLSA, under Sec. 4(f)
>
>> Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States * * *.
>
> The legislative history of the 1974 amendments indicates Congress' rationale for providing this departure from the general administrative scheme. *See* H.Rep. No. 93-913, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 2811, 2837. Congress noted that the Civil Service Commission (succeeded by OPM) opposed bringing federal employees under the coverage of the FLSA as such employees were "already covered by special pay provisions of Title 5, United States Code, and [there was concern] that enactment * * * would confuse the administration of these provisions and could raise jurisdictional problems of administration." *Id*. Congress responded to these concerns by covering federal employees under the FLSA, while charging the Civil Service Commission with the administration of the Act so far as federal employees (other than an exempted group) were concerned. Congress then explicitly set forth its intent concerning administration:

> "It is the intent of the Committee that the Commission will administer the provisions of the law in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy."

*Id*. [Emphasis supplied.]

Thus OPM has been given the power to interpret the statute and to set forth the guidelines and policies of the agency. OPM has met its obligation by the promulgation of FPM Letter 551, through which the agency attempts to limit the confusion resulting from applying two different laws to the same concern. We conclude that OPM's interpretative guidelines "harmonize[s] with the statute's 'origin and purpose,' " the standard stated in *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982), as well as with the Secretary of Labor's regulations.

Similarly, from *Lanehart v. Horner*, 818 F.2d 1574, 1578 (Fed. Cir. 1987):

> OPM was also instructed by the Congress to administer the 1974 Amendments in a manner consistent with the Department of Labor's administration of FLSA in the private sector. See H.R.Rep. No. 913 at 28, reprinted in 1974 U.S.Code Cong. & Admin.News at 2837."

Where the peculiarities of Title 5 pay administration requires a result different

than might occur through DOL rules, under *Lanehart*, *id.*:

> . . .While the administration of FLSA resides generally in the Department of Labor, the OPM (and its predecessor, the Civil Service Commission) was specifically authorized by Congress to administer FLSA in the federal sector. 29 U.S.C. § 204(f). The legislative history indicates that this was done so that any conflicts between Title 5 pay entitlements and entitlements provided for in the FLSA could be resolved by a single authority. . .

*See Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003) ( "In resolving

conflicts between OPM administration and Labor Department administration, Congress has instructed that "[OPM] will administer the provisions of the [Fair Labor Standards Act] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." House Report at 28.").

DOL guidance is followed by this Court for that agency's expertise as primary exponent of the FLSA. *See Akpeneye v. United States*, 990 F.3d 1373, 1381-82 (Fed. Cir. 2021) ("To be sure, although we are not bound by the regulation, the Supreme Court has held that the Department's "interpretations and opinions ... while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)—a principle that has come to be known as "*Skidmore* deference" after the FLSA case."); *cf. Alexander v. United States*, 32 F.3d 1571, 1578 (Fed. Cir. 1994) (FLSA and FEPA overtime claims: "This interpretation is consistent with Department of Labor (DOL) FLSA regulations cited by appellants." [footnote omitted]).

Of the EEOC regulations and guidance cited by Moore in his principal brief, Respondent is somewhat dismissive, Resp. Br., p. 13:

Further, Title VII (to which the EEOC regulations implement) provides for jurisdiction in a United States district court," but not in this Court. 42 U.S.C. § 2000e-5(f)(3)." Thus, the EEOC regulations cannot serve as a binding or persuasive authority in this Court, as OPM's EPA regulations govern the administration of the EPA to federal employees. 29 U.S.C. § 203(e)(2); 204(f).

The EEOC regulations are relevant because following the 1978 Reform Act, EEO regulation for federal employees was transferred to EEOC by Reorganization Plan No. 1, and that transfer included administration of equal pay enforcement functions earlier vested in DOL. 43 F.R. 19807 (May 9, 1978). *See* 5 CFR 551.102(b). EEOC's guidance for the federal sector is relevant to the elements of an EPA claim that Moore seeks to pursue. The regulatory guidance by a statutorily-charged enforcement agency carries weight. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (FLSA) ("We consider that the rulings, interpretations, and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

## C.  RESOLUTION OF RESPONDENT'S AFFIRMATIVE DEFENSES MUST AWAIT DEVELOPMENT ON REMAND IN THE CLAIMS COURT

Respondent's Brief, perhaps recognizing that Moore has pleaded a proper EPA case, advances to the argument that Moore cannot possibly show that the complained-of wage disparity is "because of sex," essentially arguing before even answering the

-12-

Claims Court complaint, going through discovery, summary judgment, or trial, that the exercise would be futile.

The argument appears to be that the proceeding would be futile because Moore did not timely apply for pay transition, that the program is now closed (though its salary raises [and disparities] continue), and that the historical development and application of the pay transition program was not based on intentional wage discrimination in violation of the EPA.

These are arguments that Respondent may be able to offer through an answer and as affirmative defenses, to which Moore may respond by showing the application program was not necessary (since SEC had all the information in its existing records that was needed to evaluate his salary); that there was no bona fide reason to cut the program off and accept no later applicants (since the salary increases and associated funding granted to earlier applicants continued into the indefinite future); that some number of later applicants were accepted into the program (factual determinations have not been made as to how many later applicants there were and when and under what circumstances their applications and associated pay increases were granted—Respondent offers a figure in its Brief, but that's not in Moore's complaint).

Those types of reasons are evaluated by some circuit courts under a reasonable business necessity analysis not yet applied in this case in the Claims Court—there

having been no discovery or factual development of the case outside the allegations of the complaint—or in any decision of this Court.

To avoid indiscriminate reliance on the "other than sex" affirmative defense, some circuits require the employer to demonstrate a legitimate business necessity for the purportedly sex-neutral practice that creates a wage or benefit disparity. *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) ("The fourth exception, the catch-all, relied upon by UC in this case, permits a "factor other than sex" to be an affirmative defense only if, "at a minimum, [it] was adopted for a legitimate business reason." *Beck-Wilson* , 441 F.3d at 365 (quoting *EEOC v. J.C. Penney Co.* , 843 F.2d 249, 253 (6th Cir. 1988))."); *EEOC v. J.C. Penney Co.*, 843 F.2d 249, 253 (6th Cir. 1988) (Title VII analysis reference EPA: "The 'factor other than sex' defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."); *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) ("Congress intended for a job classification system to serve as a factor-other-than-sex defense to sex-based wage discrimination claims only when the employer proves that the job classification system resulting in differential pay is rooted in legitimate business-related differences in work responsibilities and qualifications for the particular positions at issue.").

That said, some circuits find no reason to provide a qualification to the "other

-14-

than sex" affirmative defense. *See Taylor v. White*, 321 F.3d 710, 719 (8th Cir. 2003) ("[O]ur concern is not related to the wisdom or reasonableness of the asserted defense. It is related solely to the issue of whether the asserted defense is based on a "factor other than sex." 29 U.S.C. § 206(d)(1)(iv). We "`do not sit as a super-personnel department that re-examines an entity's business decisions.'" *Kipp v. Mo. Highway and Trans. Comm'n.*, 280 F.3d 893, 898 (8th Cir. 2002)."); *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994) ("Because it is not our province to second-guess the employer's business judgment, we ask only whether the factor is bona fide, whether it has been discriminatorily applied, and in some circumstances, whether it may have a discriminatory effect.").

All this relates to the affirmative defenses under the EPA. And Respondent has not yet filed its answer, it has not yet pleaded any affirmative defense; it has not undergone discovery as to the factual bases—the legitimacy of the claimed defense; it has not yet had its position evaluated by the trier of fact. What's offered in Respondent's brief is speculation as to the outcome, but that outcome is a matter for the trier of fact, and this Court does not try facts. *See Middleton v. DOD*, 185 F.3d 1374, 1383 (Fed. Cir. 1999) ("[A]s an appellate court, we may not find facts or assess credibility."); *cf. Williams v. SSA*, 586 F.3d 1365, 1369 (Fed. Cir. 2009) ("We decide cases on the record before us, not on the basis of facts stated by counsel.").

## D.    THE SCOPE OF DISCOVERY IS PROPERLY LEFT TO THE CLAIMS COURT ON REMAND

As to discovery, Respondent urges outright dismissal of Moore's EPA claim, but the law supports reversal of the result below, and remand, since Moore makes out a *prima facie* case. Respondent urges that discovery should be precluded. But pretermitting discovery seems premature. Discovery will be important in developing a record to defeat or support summary judgment or proceed to trial or to evaluate settlement. SEC may assert EPA affirmative defenses that are factually-based. "Litigations are fought and won with information." *Micron Technology*, *Inc. v. Rambus*, *Inc.*, 645 F.3d 1311, 1327 (Fed. Cir. 2011). Discovery, if timely initiated, relevant, and procedurally compliant is a right to a litigant, subject to the control of the trial court.

There remain some differences on matters asserted as facts by Respondent in its brief. Though these issues do not control disposition of what constitutes a *prima facie* case, we add some comments. Some people were allowed to enter the pay transition program to recalibrate their salaries after the cutoff period. How many were allowed to do so, when they were allowed to do so, and why they were allowed to do so are matters to be developed through discovery. Respondent references termination or the pay transition program. While the applications may have been cut off, the benefits for those whose salaries were not. Salaries once raised were not later reduced; they were

permanent salary increases—or at least that is Moore's understanding, which goes to any suggestion that the pay transition program had funding limited in amount or duration. This too will be a subject of discovery. And Moore does not concede or agree that the salary differentials were not because of, on account of, or the result of sex under the EPA. That is a legal conclusion to be made by a court once the facts are fully developed and once the burden shifting analysis under the EPA occurs.

The Claims Court's dismissal of Moore's complaint rested on his failure to plead historical or other discrimination as the reason for the wage disparity, and that predicate was based on *Yunus*, distinguishable on the facts of that case, and *Gordon*, vacated, of doubtful precedential value. Moore may, or he may not, survive summary judgment or a merits trial. But whatever the future holds, Moore is entitled to a fair opportunity to win, settle, or lose in the Claims Court. This Court should remand Moore's case for further proceedings.

### III.  CONCLUSION AND RELIEF SOUGHT

Moore's complaint stated an EPA claim. The judgment and opinion below should be reversed or vacated and the matter remanded to the Claims Court for adjudication.

Respectfully submitted,

/s/ Peter Broida

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
Telephone: 703-841-1112
Facsimile: 703-841-1006
peterbroida@gmail.com

Attorney for Timothy Moore

CERTIFICATE OF COMPLIANCE

I certify that through use of the WordPerfect word-counting feature, that there are 4,824

words in this brief. This complies with the word limits of this Court's rules.

/s/ Peter Broida

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
Telephone: 703-841-1112
Facsimile: 703-841-1006
peterbroida@gmail.com

Attorney for Timothy Moore

July 28, 2022

-18-